MOFU, APPELLEE, *v.* STATE OF OHIO, STATE MEDICAL BOARD, APPELLANT.

(No. 48234—Decided December 17, 1984.)

*Stephen D. Walters,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *William Scott Lavelle,* for appellant.

*Per Curiam.* The State Medical Board rejected four license applications by a medical school graduate who had practiced elsewhere. Following an administrative hearing on the last two denials, the board again denied them. The applicant appealed to the common pleas court, which reversed the board's decision.

The board now appeals to this court, complaining that the court erred by (1) applying an incorrect standard to review the board's order, (2) failing to state its reasons for the reversal, and (3) reversing an order supported by reliable, probative and substantial evidence. While the trial court had no duty to explain its judgment, we agree with the board's contention that it misapplied the proper standard for review. Hence, we reverse.

I

The applicant completed his undergraduate education in 1969 and received his medical degree in 1973. In 1975 the state of Georgia licensed him to practice medicine. In the same year he obtained a license to practice in California by "endorsement" of his Georgia registration. Likewise, in 1978 he received a Michigan license by endorsement of his Georgia license. During these years, the applicant pursued postgraduate training in those states.

On June 25, 1979, he moved to Ohio to accept a position as a resident at a local teaching hospital. On November 13, 1979, the State Medical Board received his request for application forms for a permanent Ohio license by endorsement of his Georgia registration. Before the applicant took any further action to obtain an Ohio license, the California Medical Board notified him they had undertaken disciplinary proceedings against him. That notice in January 1980 specified grounds related to his activities there in 1977 and 1978, and scheduled a hearing on those charges in February. Believing that the

charges had no merit, the applicant determined not to attend the California hearings. Instead, he relied on a lawyer who represented another physician in the same disciplinary case to protect his interests there.

On February 19, 1980, the applicant supplied the Ohio board with handwritten information on the board's "Screening Information" form. The form directed:

"List all states in which you have been licensed to practice medicine and surgery and the date the licenses were issued. Place a check beside 'Yes' if your license is current."

The applicant listed Georgia and Michigan with dates of his licensure in those states, indicating that both licenses were then current. He did not list his California registration. Although he listed a California hospital as a place he received training before his licensure there, he did not list any California experience after his licensure. He later testified that, despite his knowlege of the pending California disciplinary proceedings, his failure to list his California license on that form was "an honest omission."

On March 9, 1980, the applicant sent the state board his formal application for a permanent license. In language which differed slightly from the "Screening Information" form, the application form directed:

"List *ALL* states in which you are or have been fully licensed to practice medicine and surgery. Indicate the license number and the date it was issued. If the license is properly renewed, check YES under current. If the license was not renewed, check NO." (Emphasis *sic.*)

The applicant listed Georgia and Michigan with the "date of issuance" and "license number" for each. He showed the Georgia license as current and the Michigan license as not current. He did not list a California license, but

he identified the California hospital that employed him in the medical employment history part of the form.

In fact, his Georgia and Michigan licenses were delinquent because he had failed to request their renewal and pay the prescribed fees for 1980. At his later hearing, he testified that he did not realize his Georgia license was then delinquent and he promptly remedied the defect when he learned about it.

The Ohio Medical Board conducted its investigation of this application for permanent licensure. It discovered the applicant's California license, the pending disciplinary proceeding there, his grades on the Georgia examination, and the delinquent Georgia renewal. On April 30, 1980, the Ohio board denied this application for a permanent license, citing two reasons: (1) his grade on one part of the Georgia examination fell slightly below Ohio minimum standards, and (2) he failed to disclose his California license on both forms he had supplied, and disciplinary proceedings were pending there.

In May 1980, the California board notified the applicant that it had revoked his California license. At his later Ohio hearing, he testified that he disputed the California decision, so he retained new counsel to seek its reversal. By letters to the Ohio board dated July 3, 1980 and October 2, 1980, the applicant expressed his views about the California ruling and described his efforts to challenge it. His counsel represented in his later objection to the Ohio hearing examiner's report that the California board ultimately reinstated the applicant's license there on December 9, 1981.

On July 9, 1980, the applicant submitted an application for an Ohio "Temporary Certificate." The application form asked: "Has any license entitling you to practice in any foreign country or in any state or territory of the United States been suspended or revoked?" He answered "No," despite his letter acknowledging the California action which the board received one day earlier.

On February 11, 1981, the Ohio board sent the applicant a certified mail letter denying the temporary certificate for three reasons: (1) he falsely denied any revocation on this application, (2) he omitted reference to his California license in his earlier application for a permanent license, and (3) he prescribed controlled substances for certain patients in California without performing physical examinations. The board's letter further advised that he could request a hearing on this matter within thirty days. An unidentified person signed the postal receipt for the letter at the hospital address, but the applicant testified that he never received it.

The Ohio board received the applicant's second application for a temporary certificate on June 19, 1981. This time he answered the question about any license suspension or revocation with "See previous note." At the later hearing, he explained that this response referred to his earlier correspondence about the California decision.

On July 2, 1981, the Ohio board received a third application signed by the applicant for a temporary certificate. This time the inquiry about any past suspension or revocation was answered "No." At the hearing, the applicant explained that he provided the hospital with his handwritten application form (number 2) and a signed blank form (number 3). He presumed that the hospital staff typed the answers on the third application and mailed both applications to the board. He did not explain why the second and third applications arrived on different dates with different answers to the revocation question.

The board denied the second and third applications for a temporary license in a letter dated July 8, 1981. It

added a fourth reason to the three previously provided: the false answer about revocation in the third application for a temporary license. This time the applicant made a timely request for an adjudicatory hearing on the board's action.

The board's counsel withdrew the charge about providing controlled substances in California, and the hearing officer found against the applicant on the remaining charges. After reviewing the hearing officer's recommendations, the full board voted unanimously to deny the temporary license which is the subject of this appeal.

II

The applicant-appellee filed no response to the board's brief for its appeal to this court. Consequently, we have authority to "accept the appellant's [board's] statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." App. R. 18(C). The board's brief justifies such action, but we will nevertheless consider the board's assigned errors.

III

The board's first and third assignments of error assert that the trial court applied the wrong standard for its review of the board's order. R.C. 119.12 establishes the scope of review on appeals from the medical board's denial of a license application:

"The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *"

In this case, the common pleas court received no evidence beyond the administrative record. The court's limited functions are to determine whether the order of the medical board is supported by reliable, probative and substantial evidence and is in accordance with law. *Dept. of Liquor Control* v. *Santucci* (1969), 17 Ohio St. 2d 69, 72-73 [46 O.O.2d 402]; *Doelker* v. *Accountancy Bd.* (1967), 12 Ohio St. 2d 76 [41 O.O.2d 328], at paragraph two of the syllabus; *Berkson* v. *State Medical Bd.* (Oct. 21, 1982), Cuyahoga App. No. 43820, unreported. The court should not reverse a board decision which has support from reliable, probative and substantial evidence. *Harris* v. *Lewis* (1982), 69 Ohio St. 2d 577 [23 O.O.3d 485]; *Haley* v. *Ohio State Dental Bd.* (1982), 7 Ohio App. 3d 1, 3.

The board "may refuse to grant a certificate to a person found guilty of fraud in passing the examination, or fraud, misrepresentation, or deception in applying for or securing any license or certificate issued by the board." R.C. 4731.22(A). (See 137 Ohio Laws, Part I, 424, 425.) An applicant for a temporary certificate has a duty to furnish proof that "[h]e is * * * of good moral character." R.C. 4731.291(A)(1). The board had ample evidence to find deception from (a) the applicant's failure to list his California license on early forms, and (b) his false denials of any revocation on later forms. Likewise, the board could reasonably find that those actions evidenced a lack of good moral character.

The applicant testified that he had *no intention to conceal, mislead, or deceive*. Absent any clear reason for contrary conclusions, the court should accept the board's resolution of conflicts between such testimony and the documentary exhibits. Cf. *Univ. of Cincinnati* v. *Conrad* (1980), 63 Ohio St. 2d 108, 111 [17 O.O.3d 65].

186

In its judgment, the trial court stated:

"The decision of the Ohio State Medical Board is not supported by the manifest weight of the evidence, is unreasonable, and, therefore, reversed."

This is not the appropriate standard for review. Applying the proper standard, the court should have affirmed the administrative order. Hence, we sustain the board's first and third assigned errors, reverse the trial court's judgment, and enter final judgment affirming the administrative order.

## IV

We address the board's second claimed error to satisfy App. R. 12(A). In this assignment, the board complains that the trial court failed to provide any findings of fact or conclusions of law with its decisions. The board made no request for such findings and conclusions, so the court had no duty to provide them. Civ. R. 52; *Hines* v. *Amole* (1982), 4 Ohio App. 3d 263, 266.

Additionally, the common pleas court had no reason to make factual findings when its ruling rested solely on legal issues. Its appellate review of this administrative order required no factual findings. Compare *Roseman* v. *Reminderville* (1984), 14 Ohio App. 3d 124, 129, and *Cobbledick Buick, Inc.* v. *Bd. of Review* (Apr. 19, 1984), Cuyahoga App. No. 47430, unreported, with *Dawes* v. *Gould, Inc.* (1983), 13 Ohio App. 3d 56, and *Calcamp* v. *Ohio State Reformatory* (Mar. 21, 1984), Summit App. No. 11303, unreported.

Consequently, this assignment of error is overruled. For the reasons stated earlier, we reverse the trial court's judgment and enter final judgment affirming the State Medical Board's order.

*Judgment reversed.*

MARKUS, P.J., PATTON and RUSSO, JJ., concur.